IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY J. BIRMINGHAM,

    Plaintiff,

v.                                           Civil Action No. PX 16-198

PNC BANK, N.A.,

    Defendant.

******

**MEMORANDUM OPINION**

Pending before the Court is a motion to dismiss filed by Defendant PNC Bank, N.A. ECF No. 15. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, Defendant's motion will be GRANTED.

**I.    Background**

The following facts are taken from the Plaintiff's Amended Complaint, supplemented with background information found in Defendant's Motion to Dismiss.[1]

On March 26, 2007, Plaintiff Gregory J. Birmingham ("Birmingham") executed a Promissory Note with National City Bank in the amount of $327,000. ECF No. 15-1 at 2. The Note was secured by a deed of trust on real property owned by Birmingham. *Id.* Defendant PNC Bank ("PNC") acquired National City Corporation in 2008 and assumed the operating functions of National City. *Id.* at 3 n.1.

---

[1] Facts taken from Defendant's Motion are undisputed and are not used in the Court's analysis, but are necessary to provide a clear factual background.

In 2009, Birmingham entered into the Home Affordable Modification Program ("HAMP"), a government-backed program designed to help financially struggling homeowners avoid foreclosure by encouraging banks to modify the homeowners' loans to make the mortgage payments more affordable. Pursuant to HAMP, Birmingham entered into a Trial Period Plan through PNC on November 1, 2009, ECF No. 14 at 2, which is designed to test a debtor's commitment to the Program and allows the debtor to make reduced payments on his loan for three or four months while his "permanent" loan modification is being processed. At the time, Birmingham was uncertain how long his trial period would last, and hearing nothing to the contrary, made monthly trial-period payments through June of 2010.[2] *See id.* at 3–4.

On March 22, 2010, Birmingham received a letter from PNC informing him that PNC was unable to approve or finalize his request for a permanent loan modification because he failed to submit the necessary documentation. ECF No. 14 at 3. In response, Birmingham alleges that he called PNC and was told to disregard the letter and to continue making the trial period payments. *Id.* PNC sent Birmingham another letter on March 24, 2010, returning a check to Birmingham deemed insufficient to reinstate his loan from default. *Id.* at 4. Again, Birmingham alleges he contacted PNC, and again, PNC directed him to continue making the trial period payments. *Id.*

On March 25, 2010, Birmingham received another letter from PNC, this time informing him that he needed to pay $31,728.72 by April 24, 2010 to cure the loan default. ECF No. 14 at 4. Birmingham alleges he called PNC for a third time and was once again told to disregard the letter and continue making his trial period payments. *Id.* at 4.

---

[2] Birmingham's Amended Complaint states, "The Plaintiff completed his *three* Plan Payments in accordance to the agreement." ECF No. 14 at 3 (emphasis added). This suggests Birmingham is aware that his trial period was only meant to last for three months. It is not clear from the pleadings, however, when Birmingham came to this realization.

On June 29, 2010, PNC and Birmingham executed a Home Affordable Modification Agreement ("Modification Agreement"), permanently modifying Birmingham's mortgage loan. *Id.* Birmingham states—and the Modification Agreement attached to the Amended Complaint confirms—that the Agreement's "Effective Date" was February 1, 2010. *Id.* at 8. Thus, Birmingham apparently should have been making higher monthly payments under the permanent Modification Agreement beginning February 1, 2010.

Birmingham avers that he was still sending the lower trial-period payments through June 2010 because PNC falsely and negligently advised him to keep making the trial-period payments during four separate phone conversations.[3] ECF No. 14 at 7–8. Birmingham made another trial period payment on July 1, 2010 in the amount of $1,788.32, as suggested by the cover letter of the Modification Agreement. *Id.* at 4. He also alleges that he called PNC to verify that this was the correct amount, and PNC answered in the affirmative. *Id.*

As a result, Birmingham learned just after signing the June 29th Modification Agreement that he was behind on his mortgage payments by a full month. He contacted PNC "many times" over the next six months in an effort to cure the arrearage created by PNC's misrepresentations. ECF No. 14 at 4. Birmingham's loan payment problems continued, however, and on January 12, 2011, PNC sent him a letter stating that he remained in default. *Id.* On April 13, 2011, Birmingham received a Notice of Intent to Foreclose, listing a default date of December 2,

---

[3] It is unclear whether the trial period payments were for a different amount than the permanent modification payments. Birmingham's Amended Complaint seems to suggest that there was a difference, and that difference caused Birmingham to fall behind on his mortgage payments. *See* ECF No. 14 at 7.

2010.[4] *Id.* at 2. He made numerous attempts to correct the alleged errors throughout 2011 but to no avail. *Id.* at 5.

On August 29, 2013, Birmingham allegedly received a Notice of Impending Foreclosure Sale, listing a sale date of September 26, 2013. ECF No. 14 at 2. He filed for Chapter 7 Bankruptcy on September 9, 2013 and later that month sent PNC a Qualified Written Request ("QWR") under the Real Estate Settlement Procedures Act. *Id.* The purpose of a QWR, also called a Notice of Error or Request for Information, is to dispute an error relating to, or request information about, the servicing of a mortgage loan. PNC partially responded to this request on November 19, 2014 by providing Birmingham with a copy of his mortgage loan payment transaction journal. ECF No. 17 at 3. Birmingham alleges that the transaction journal provided him important information about how PNC was appropriating, or allegedly misappropriating, his payments in a way that needlessly kept him in default. *Id.*

On January 20, 2016, Birmingham filed this action against PNC, alleging both negligent and intentional misrepresentation. ECF No. 1. He later filed an Amended Complaint proceeding only on the negligent misrepresentation claim. ECF No. 14. In the Amended Complaint, Birmingham points to four occasions from March to June 2010 when PNC erroneously directed Birmingham to continue to make the lower trial-period payments when he should have been making the higher permanent-loan payments. *Id.* at 7. He also alleges that PNC failed to amend the Modification Agreement to correct their mistakes, which resulted in the loan remaining in default. *Id.* at 8. As a result, Birmingham claims, PNC foreclosed on his home.

PNC filed its Motion to Dismiss on May 17, 2016, arguing that Birmingham's claim is time barred and that Birmingham failed to plead a *prima facie* case for negligent

---

[4] On page 4 of the Amended Complaint, Birmingham alleges that he received this Notice of Intent on April 14, 2011.

misrepresentation. ECF No. 15. For the reasons that follow, the Court need only reach the statute of limitations issue.

## II.     Standard of Review

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## III.    Analysis

PNC argues that Birmingham's negligent misrepresentation claim is time-barred because the statements giving rise to his claim occurred no later than June 2010. ECF No. 15-1 at 6. Birmingham admits PNC's misrepresentations took place between March 22, 2010 and June 29, 2010. ECF No. 17 at 4, and that he discovered that PNC's statements were false between June

2010 and April 2011. Yet, Birmingham waited until January 20, 2016 to file his Complaint, well beyond the three-year statute of limitations period provided by Maryland law. *See id.*; ECF No. 1; Md. Code Ann., Cts. & Jud. Proc., § 5–101.

Because the Court has diversity jurisdiction over this case, Maryland law governs the applicable limitations period for Birmingham's negligent misrepresentation claim. *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002). Generally in Maryland, a civil action must be filed within three years from the date it accrues. Md. Code Ann., Cts. & Jud. Proc., § 5–101. The question of accrual in § 5–101 "is left to judicial determination." *Poffenberger v. Risser*, 290 Md. 631, 633 (1981) (citing *Harig v. Johns–Manville Products*, 284 Md. 70, 75 (1978)). The accrual period begins "upon the occurrence of the alleged wrong, unless there is a legislative or judicial exception which applies." *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131 (2011). "Depending upon the nature of the assertions being made with respect to the limitations plea, this determination may be solely one of law, solely one of fact or one of law and fact." *Poffenberger*, 290 Md. at 634.

The limitations bar typically is raised as an affirmative defense. However, "if the time bar—whether part of the cause of action itself or merely a condition to the remedy—is apparent on the face of the complaint, the complaint would indeed fail to state a claim *upon which relief can be granted*. A motion to dismiss would therefore be an appropriate, though not a necessary, way in which to assert that defense." *G & H Clearing and Landscaping v. Whitworth*, 66 Md. App. 348, 354 (1986) (emphasis in original). *See also Brooks v. City of Winston–Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir.1996) (citing *Richmond F. & P. R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth

6

therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."); 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate). Thus, where the face of the complaint clearly renders Birmingham's negligent misrepresentation claim time-barred, dismissal under Rule 12(b)(6) is warranted.

Here, Birmingham's Amended Complaint makes clear that the alleged material misstatements of fact constituting the negligent misrepresentation claim were made between March and June of 2010. ECF No. 14 at 3–4. Similarly, Birmingham's claimed injuries arising from the misrepresentations occurred during and immediately thereafter, as he continued to make insufficient monthly mortgage payments which resulted in his defaulting on the loan. *Id.* Thus, Birmingham's negligent misrepresentation claim accrued no later than January 2011 when he was notified that his payments were "insufficient" and his loan was in default. *Id.* The Complaint, filed over five years later, is therefore time barred.

Birmingham's response, liberally construed, is that his claims are saved under Maryland's discovery rule, a common-law exception to the Maryland three-year limitations period. The discovery rule "tolls the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." *Poole*, 423 Md. at 131 (internal citations and quotation marks omitted); *see also Dashiell v. Meeks*, 396 Md. 149, 168–69 (2006); *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95 (2000). Under the discovery rule, the Court must determine when the claimant gained actual knowledge of facts sufficient to cause "an ordinarily diligent plaintiff to

7

make an inquiry or investigation that an injury has been sustained." *Georgia-Pac. Corp. v. Benjamin*, 394 Md. 59, 89 (2006). The limitations clock begins to run, however, at the beginning of such diligent investigation, not the end. *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 447–48 (2000); *See also Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) ("[W]hen a claimant gains knowledge sufficient to put her on inquiry she is charged, as of that date, with knowledge of facts that would have been disclosed by a reasonably diligent investigation, . . . regardless of whether such an investigation was conducted or was successful.") (internal citations and quotation marks omitted).

Birmingham claims that limitations should be tolled because even though he learned in 2011 that PNC's 2010 over-the-phone assurances regarding payment amounts were false, he neither knew the exact nature of the problem nor how to cure it until November 19, 2014 when PNC sent Birmingham a copy of his transaction journal. ECF No. 17 at 3. Birmingham claims that receiving the transaction journal put him on notice regarding the negligent misrepresentation claim because he learned for the first time the precise manner in which PNC applied his 2010 payments to his loan. ECF No. 17 at 3.

But according to Birmingham's own allegations in the Amended Complaint, Birmingham knew by spring of 2011 that his prior trial period payments between February and June 2010 had been insufficient; he knew that PNC erroneously encouraged him to make these insufficient payments; he knew that PNC "acknowledged the[ir] mistake;" and he knew he defaulted on the loan as a result. ECF No. 14 at 4–5, 7–8. Thus, Birmingham was clearly armed with enough information by April 2011 regarding the nature and effect of the March to June 2010 misstatements to trigger a reasonable plaintiff's diligent investigation of any potential causes of action.

Moreover, the information contained in the transaction journal that Birmingham obtained in 2014 was neither unknowable nor undiscoverable during the limitations period. *Cf. Benjamin v. Union Carbide Corp.*, 162 Md. App. 173, 193 (2005), *abrogated on other grounds by Mummert v. Alizadeh*, 435 Md. 207 (2013) (stating that the sufficiency of the knowledge that would have resulted from a reasonable investigation must also be tested to ensure a claimant could gain the knowledge necessary to bring a claim within the limitations period); *see also Georgia-Pac. Corp.*, 394 Md. at 90. Rather, the transaction journal is simply a ledger of historical payments that Birmingham had made on the loan in 2010, and so could have been obtained at any time.

## IV. Conclusion

Accordingly, the Amended Complaint, on its face, establishes that Birmingham filed his complaint well outside applicable limitations period even when considering any tolling applicable under the discovery rule. Thus, Birmingham's negligent misrepresentation fails as a matter of law. PNC's motion to dismiss is granted. A separate order will follow.

/S/
PAULA XINIS
United States District Judge